UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOHNNY DREW,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:16-cv-00289

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 9), Plaintiff's reply (doc. 5), the administrative record (doc. 6), and the record as a whole.[3]

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

A.   **Procedural History**

Plaintiff filed applications for SSI and DIB asserting disability as of January 30, 2013 as a result of a number of impairments, including, *inter alia*, sleep apnea, an anxiety disorder, and depression.  PageID 41, 43.

After initial denials of his applications, Plaintiff received a hearing before ALJ Gregory Kenyon on January 5, 2015.  PageID 166-215.  The ALJ issued a written decision on February 24, 2015 finding Plaintiff not disabled.  PageID 40-49.  Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 30, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild cervical and lumbosacral degenerative disc disease, degenerative joint disease of the shoulders, obstructive sleep apnea, an anxiety disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to

perform light work[4] as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) frequent crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds;(3) no work around hazards, such as unprotected heights or dangerous machinery; (4) frequent overhead reaching; (5) limited to performing unskilled, simple, repetitive tasks; (6) occasional, superficial contact with coworkers and supervisors; (7) no public contact; (8) no fast paced production work or jobs involving strict production quotas; and (9) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2013, through the date of this decision

---

[4] The Social Security Administration ("SSA") classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

(20 CFR 404.1520(g) and 416.920(g)).

PageID 40-49.

Thereafter, the Appeals Council denied review on May 13, 2016, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 27. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B. Evidence of Record

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 40-49. Plaintiff, in his Statement of Errors, also summarizes the evidence of record. Doc. 7 at PageID 593-601. The Commissioner, in response to Plaintiff's Statement of Errors, defers to the ALJ's recitation of the evidence and presents no objection to Plaintiff's summary. Doc. 9 at PageID 616. Except as otherwise noted herein, the undersigned incorporates the summary of evidence as set forth by the ALJ and Plaintiff.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine whether (1) the ALJ's non-disability finding is supported by substantial evidence, and (2) the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

The court must perform the first judicial inquiry with the understanding that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.     "Disability Defined"**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job, and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.      Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In his Statement of Errors, Plaintiff argues that the ALJ failed to: (1) appropriately weigh the opinions of his treating physician, Carlos Menendez, M.D.; (2) appropriately weigh the opinion of his examining psychologist, Brian Griffiths, Psy.D.; (3) appropriately weigh the opinions prepared by the state agency consultants; and (4) find him credible. Doc. 7 at PageID 601-11. Finding Plaintiff's first alleged error to be well taken, the undersigned does not address the merits of Plaintiff's three remaining claims.[5]

Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id.* Under the regulations in effect prior to March 27, 2017, the opinions of treaters are entitled to the greatest

---

[5] Nevertheless, on remand, the undersigned directs that the ALJ assess Plaintiff's credibility anew following a meaningful explanation of the weight accorded to the medical source opinions.

deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

Treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2). A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[6]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of

---

[6] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id*.

the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Dr. Menendez began seeing Plaintiff in 2003. He offered several opinions in this case based on his treatment of Plaintiff for his physical and mental impairments. In May, August, and November of 2013, Dr. Menendez authored opinions as part of Plaintiff's application for state welfare benefits, in which he concluded that Plaintiff's condition was "deteriorating" and that his impairments rendered him "unemployable." PageID 299-303, 341-43, 395-96. Specifically, Dr. Menendez found that Plaintiff had "marked" limitations in pushing/pulling and "extreme" limitations in bending.[7] *Id.*

In January 2013, Dr. Menendez opined that Plaintiff experienced "marked" limitations in his ability to: understand and remember detailed instructions; maintain attention and

---

[7] Whereas "mild" and "moderate" functional limitations are generally considered "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991).

concentration for an extended period; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goals and make plans independently of others. PageID 466-67

In March 2014, Dr. Menendez completed a final set of interrogatories addressing Plaintiff's mental and physical limitations. PageID 468-78. In regards to Plaintiff's mental limitations, Dr. Menendez opined that Plaintiff has significant problems with anxiety and/or depression which would "markedly limit his ability to withstand the stresses and pressures of ordinary work activity." PageID 469. More specifically, he opined that Plaintiff: would not be prompt and regular in attendance because "his symptoms occur daily and would cause frequent absences"; cannot respond appropriately to customary work pressures or withstand the pressure of meeting normal standards of work productivity because "he would have difficulty keeping up . . . [and] stress would exacerbate his anxiety"; and cannot maintain concentration and attention for extended periods or sustain an ordinary routine without special supervision. PageID 471-75. He ultimately indicated that Plaintiff suffers from "marked" limitations in concentration, persistence, or pace "resulting in a failure to complete tasks in a timely manner (in a work setting or elsewhere)." PageID 476.

In regards to Plaintiff's physical limitations, Dr. Menendez noted in his March 2014 interrogatory responses that Plaintiff can stand for only thirty minutes at a time and sit for only sixty minutes at a time. *Id*. He restricted Plaintiff to lifting a maximum of twenty pounds and only occasionally bending or stooping. *Id*. Dr. Menendez concluded that Plaintiff has the capacity for only two hours of work per day. *Id*.

In weighing Dr. Menendez's opinions, the ALJ found that they were "not supported by the record" and entitled to "little weight." PageID 48. Specifically, the ALJ found the following:

> The claimant has received little treatment from either Dr. Menendez or from other physicians for his physical complaints. His most significant problem is the cervical degenerative disc disease. However, he has only received physical therapy for this problem and surgery has been ruled out as a treatment option. There is also no basis to conclude that the claimant's mobility is compromised, as Dr. Menendez indicated. He can stand and walk for a sufficient period to perform the full range of light work from a mobility perspective. Additionally, little weight is also given to the mental assessments submitted by Dr. Menendez, as he is the claimant's family physician and not a mental health professional. His progress records also show evidence of only mild to moderate level anxiety.

PageID 48 (citations omitted). The Court agrees with Plaintiff that the ALJ erred in assessing the weight to be reasonably accorded to Dr. Menendez's opinions.

Initially, the Court notes that the ALJ failed to set forth the required controlling weight analysis when analyzing Dr. Menendez's opinions. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). Thus, the Court cannot determine whether the ALJ undertook the "two-step inquiry" required when analyzing treating source opinions. *See Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-78 (6th Cir. 2013). The lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Id.* at 377 (citations omitted). On this basis alone, reversal and remand is mandated. *See Aytch v. Comm'r of Soc. Sec.,* No. 3:13-cv-135, 2014 WL 4080075, at *4 (S.D. Ohio Aug 19, 2014).

Even assuming, *arguendo*, that the ALJ adequately conducted and explained the controlling weight test -- which the undersigned concludes he did not -- the ALJ nevertheless failed to provide good reasons for discounting the weight accorded to Dr. Menendez's opinions.

10

### A. Physical Limitations

First, the ALJ's finding, that Dr. Menendez provided Plaintiff with generally "little treatment" for his physical complaints, is impermissibly vague. PageID 48. The ALJ failed to identify any specific parts of the record that he found conflicted with Dr. Menendez's treatment of Plaintiff or explain how his description of the level of Dr. Menendez's treatment as "little" undermined his findings. An ALJ has a duty to meaningfully articulate the reasons why he or she has credited or rejected particular sources of evidence. *See Gayheart,* 710 F.3d at 376-78; *accord McHugh v. Astrue,* No. 1:10-cv-734, 2011 WL 6130824, at *4 (S.D. Ohio Nov. 15, 2011) (holding that as a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion). Therefore, the ALJ's reasoning in this regard is not supported by substantial evidence.

Second, the ALJ suggested that Plaintiff's failure to have back surgery undermines Dr. Menendez's opinion that Plaintiff's cervical degenerative disc disease is severe. PageID 48. It is unclear how Plaintiff's course of treatment, where surgery has not been recommended anywhere in the record, impacts Dr. Menendez's opinion. *See Pickett v. Astrue,* No. 3:10-cv-177, 2011 WL 1626559, at *8 (S.D. Ohio April 28, 2011). Indeed, Plaintiff testified at his hearing that surgery was ruled out by his neurologist not because his cervical pathology or symptoms were non-severe, but instead because of the impact surgery would have on his range of motion and the likelihood that a fusion would simply lead to the need for more surgical intervention. PageID 65-66. Moreover, given the inherent risks associated with any surgery, the fact that Plaintiff did not have surgery on his back fails to undermine Dr. Menendez's opinions. *See Ladwig v. Comm'r of Soc. Sec.,* No. 3:15-cv-00128, 2016 WL 3434024, at *9 (S.D. Ohio June 22, 2016) (finding claimant's act of avoiding or delaying surgery failed "to create a reasonable inference

that his pain levels were not severe" in light of "the inherent risks associated with any surgery"). Therefore, the undersigned finds the ALJ's reasoning in this regard is also unsupported by substantial evidence.

Third, the ALJ erred in concluding that Dr. Menendez's opinions are not credible because Plaintiff "can stand and walk for a sufficient period to perform the full range of light work from a mobility perspective." PageID 48. This assertion made by the ALJ fails to cite specifically to the record as required under the regulations. *Vondenberger v. Colvin*, Case No. 3:14-cv-00202, 2015 WL 4251086, at *12 (S.D. Ohio, June 23, 2015) (holding that "the Commissioner is required to provide reasons that are "sufficiently" specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). Moreover, by failing to cite to the record for support in his conclusion, the ALJ appears to have impermissibly relied on his own interpretation of the record's medical data when formulating Plaintiff's RFC. S*ee Isaacs v. Comm'r of Soc. Sec.,* No. 1:08-cv-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms"). Therefore, the undersigned finds the ALJ's reasoning in this regard is also unsupported by substantial evidence.

### B. Mental Limitations

First, the ALJ's conclusion -- that Dr. Menendez's opinions regarding Plaintiff's mental limitations were owed no deference because he is "the claimant's family physician and not a mental health professional" -- is unsupported by substantial evidence. PageID 48. "Although specialization is a factor to be considered under the regulations, it does not permit an ALJ to fully reject a long-term treating physician's opinions without providing more specific reasoning

12

concerning his or her supposed lack of expertise." *Marcum v. Comm'r of Soc. Sec.*, No. 3:15-cv-245, 2016 WL 4086984, at *12 (S.D. Ohio Aug. 2, 2016). This is particularly significant here because Dr. Menendez is a board certified family physician. *Id.* at 466. The American Board of Family Medicine, the body responsible for certifying family-medicine physicians, describes family medicine as "the medical specialty that provides continuing, comprehensive health care for the individual and family. It is a specialty in breadth that integrates the biological, clinical and behavioral sciences . . . ." *See Marcum*, 2016 WL 4086984, at *12 (citing The American Board of Family Medicine Website). Given the inclusion of behavioral sciences within this medical specialty, substantial evidence does not support the ALJ's decision to fully reject Dr. Menendez's opinions on the sole ground that he is not a mental-health specialist. *Id.*

Second, insofar as the ALJ found that Dr. Menendez's opinions were inconsistent with his treatment notes, which purportedly showed that Plaintiff suffered from "mild" to "moderate" anxiety, the ALJ inappropriately substituted his own lay interpretation of those notes. PageID 48; *see Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) (holding an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Simpson v. Comm. of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings")); *see also Martin v. Colvin*, No. 3:15-cv-131, 2016 WL 4764961, at *1 (S.D. Ohio Sept. 13, 2016). Here, Dr. Menendez regularly described Plaintiff as experiencing significant anxiety symptoms, including shortness of breath, chest pain, tachycardia, insomnia, and perspiration, from a daily to constant basis in his treatment notes. *See* PageID 306, 309, 319,

13

345, 348, 358, 364, 428, 574.  Dr. Menendez further noted on several occasions that Plaintiff had "difficulty leaving his home due to anxiety."  PageID 319, 358.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits.  Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990).  The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

Here, evidence of disability is not overwhelming, and therefore, a remand for further proceedings is proper so that the ALJ can properly assess all opinion evidence of record anew in light of the foregoing findings.

## V.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:  6/29/2017                                         s/ Michael J. Newman
                                                                Michael J. Newman
                                                                United States Magistrate Jud

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).